No. 37,571

Ross L. Benson, *Appellant*, v. J. C. McIntyre, *Appellee.*

(206 P. 2d 1073)

Opinion filed June 11, 1949.

*R. C. Russell* and *Isabel Obee,* both of Great Bend, were on the brief for the appellant.

*Wayne H. Lamoreux,* of Great Bend, was on the brief for the appellee.

The opinion of the court was delivered by

Price, J.: This was an action brought by the appellant against the appellee for an accounting and to recover an amount claimed to be due him growing out of the sale of his interest in a partnership that existed between the parties prior to its dissolution on July 11, 1942. For convenience they will be referred to as plaintiff and defendant.

The parties had been friends for some time and plaintiff was a contractor and builder while defendant was primarily an office and retail man. Both were without any substantial assets but agreed to go into the lumber business at Great Bend. This arrangement went along for some time and apparently some dissatisfaction arose between them and they decided to discontinue and dissolve the partnership. An inventory of the physical assets of the business was taken under the supervision of the defendant. The accounts receivable were ascertained and determined between the parties to be in the amount of $27,822.07, one-half of which sum belonged to each of the parties. There was no outstanding indebtedness of the partnership but plaintiff was indebted to the firm in the sum of approximately $10,000 and he also had some outstanding obligations consisting of small accounts, some taxes and some wages. With these matters all in mind the parties entered into a written agreement of dissolution under date of July 1, 1942, as follows:

"Whereas, the undersigns, J. M. McIntyre and Ross L. Benson, have been doing business in Great Bend, Kansas, as partners under the firm name of B. & M. Lumber Company; and,

"Whereas, the undersigned parties desire to dissolve partnership and reach a division of the assets of said Lumber Company; and,

"Whereas, there are outstanding accounts in the sum of $27,822.07 due to said partnership, and all of the partnership's debts, excepting the 1941 and 1942 taxes, are paid.

"Now, therefore, it is agreed as follows:

.    .    .    .    .    .    .    .    .    .    .    .

"Second. Benson does hereby sell, assign, convey and set over unto McIntyre all of the interest of Benson in and to the stock, ground leases, fixtures, sheds and equipment of all kind of the B. & M. Lumber Company, excepting only the trucks mentioned in the paragraph above, for the sum of $20,128.66, payable as follows:

"A. The sum of $6,217.62, cash.

"B. The balance of the purchase price shall be paid by delivering to Benson one-half of the proceeds of the outstanding accounts as said accounts are collected. It is further agreed that one-half of the 1941 taxes and one-fourth of the 1942 taxes upon the business of the partnership shall be deducted by McIntyre from Benson's share of the amounts collected from the outstanding accounts.

"Third. It is further agreed that the partnership is hereby dissolved.

"In witness whereof, the parties have hereunto set their hands this 11 day of July, 1942.

"J. C. McIntyre,
"Ross L. Benson."

Later the plaintiff moved to Colorado and defendant conducted the business, during which time he made collections of outstanding accounts and sent remittances to plaintiff from such collections.

The matter ran along and later plaintiff brought suit to recover the sum of $13,911.04 claimed to be due him and for an accounting. For reasons which will appear later the pleadings of the parties are not summarized but it is sufficient to state that the claim of plaintiff is that under the terms of their written agreement above set forth he was entitled to the sum of $20,128.66 *plus* one-half of the accounts receivable, less certain deductions such as taxes paid by defendant for him and after a certain trade discount agreed upon by the parties was deducted from the amount of accounts receivable, leaving a total sum due plaintiff in the amount of $33,035.63.

Various exhibits in the nature of accounts are set out in the abstract and counter abstract and while we have carefully examined them it is unnecessary to discuss them in detail for at the trial in the lower court it was stipulated and agreed between the parties that

defendant had paid to plaintiff or for and on plaintiff's behalf the sum of $19,381.42.

With this as a starting point, let us examine the facts from the standpoint of defendant. His contention is that under the terms of the written agreement the sum of $20,128.66 was all that was due plaintiff for the latter's interest in the business; that the sum of $6,217.62 of said purchase price was payable in cash forthwith and the balance to be paid plaintiff from the proceeds of the outstanding accounts as they were collected. It will be noted that one-half of the total of the outstanding accounts, plus the sum of $6,217.62 equals the amount claimed by defendant to be due plaintiff for the latter's interest in the business. In this connection it also should be noted that the parties agreed there was a trade discount in the amount of $2,156.54 to be deducted from the total amount of accounts receivable, that taxes had been paid by defendant for plaintiff in the sum of $154.98, and that there was due plaintiff from defendant the sum of $229.19 by way of an adjustment on past wages. It thus would appear that defendant owed plaintiff the sum of $12,832.77 for plaintiff's one-half of the net amount of accounts receivable, less the item of taxes paid by defendant for plaintiff in the amount of $154.98, plus the item of $229.19 as adjustment on wages, plus the sum of $6,217.62 which was payable at the time in cash, making a total amount due plaintiff of $19,124.60, and defendant prayed judgment in the amount of $256.82, the amount which he had allegedly overpaid plaintiff.

In view of plaintiff's admission that he has already received from defendant the sum of $19,381.42, which amount equals the total defendant claims plaintiff was entitled to, plus the alleged overpayment of $256.82, it can readily be seen that really the only issue before us is the interpretation of the written agreement entered into between the parties.

The trial court found that the value of one-half interest in the accounts receivable, fixtures, equipment and other property amounted to $20,128.66, which amount the plaintiff agreed to take from defendant in settlement of the purchase price of plaintiff's half interest in the lumber yard, and further found from the evidence that defendant had overpaid plaintiff in the amount of $256.82, for which sum judgment was rendered in favor of defendant.

We will not extend this opinion with a detailed discussion of the

various accounts and exhibits which were introduced in evidence, but they, together with the testimony, have been examined in detail and we are of the opinion that the findings and judgment of the lower court are amply supported by sufficient competent evidence. As heretofore mentioned, plaintiff's chief contention is that he was entitled to the sum of $20,128.66 and in *addition* thereto one-half of the accounts receivable as they were collected. We cannot agree with such contention. From the very terms of the agreement between the parties it is clear that plaintiff was to receive the total sum of $20,128.66 for his interest in the business and it was to be payable—$6,217.62 in cash, with the balance payable out of the outstanding accounts as they were collected. In this connection also the evidence is clear that throughout all of their dealings the parties considered the business, including the outstanding accounts, to be worth approximately $40,000. In fact, the plaintiff himself testified as follows:

"I summed up what I thought the value of the yard—we had taken in $40,000, or close to it, was supposed to be somewhere near around our profit. I had that estimated. I told Mr. McIntyre I would take $20,000 for my share or I would give him $20,000 for his share, and I would keep the outstanding accounts."

On January 22, 1945, plaintiff wrote to defendant from Boulder, Colo., concerning the matter of the final windup of their affairs and in this letter stated that he had received around $15,000 and called defendant's attention to the fact that there was a balance of $5,128.66 still due. Four days later he again wrote to defendant and stated as follows:

"I sold you the yard for $20,128.66 and we both signed the contract to that effect. I don't expect to release my interest in the yard, till I receive that amount.

"Receiving ½ the amt. of the accounts as they came in, was one way of paying me, and I excepted it as a means to help you buy the yard."

Summing up these matters, we think the lower court was correct in finding that the total amount due plaintiff for his interest in the business, including the outstanding accounts, was the sum of $20,-128.66; that after certain deductions and discounts were taken into consideration plaintiff was entitled to receive the sum of $19,124.59, and since plaintiff admitted that he had received $19,381.42, the defendant was therefore entitled to judgment against plaintiff in the amount of $256.82 on account of such overpayment. Plaintiff also complains of the ruling of the lower court that all uncollected

accounts receivable should be the property of defendant but such contention is without merit for the simple reason that since plaintiff had received all that was due him he is not in any position to assert ownership to such accounts as were yet outstanding.

The judgment of the lower court was clearly correct and it is hereby affirmed.